**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| DocRx, Inc., | |
| Plaintiff, | No. CV-14-00815-PHX-PGR |
| vs. | |
| DocRx Dispense, Inc.; Martin V. Olson, | <u>DEFAULT JUDGMENT OPINION AND PERMANENT INJUNCTION ORDER</u> |
| Defendants. | |

Pending before the Court is Plaintiff's Motion for Entry of Default Judgment (Doc. 27). Having considered the motion in light of the relevant record, the Court finds that the motion should be granted in part and denied in part pursuant to Fed.R.Civ.P. 55(b)(2).

<u>Background</u>

Plaintiff DocRx, Inc. commenced this action, which is based on federal question jurisdiction, on April 17, 2014. Its First Amended Complaint ("FAC") (Doc. 9) alleges claims for Infringement of Federally Registered Trademark Under 15 U.S.C. § 1114 (First Cause of Action), Unfair Competition; False Designation of Origin Under 15 U.S.C. § 1125(a) (Second Cause of Action), Anticybersquatting

-1-

Consumer Protection Act Under 15 U.S.C. § 1125(d) (Third Cause of Action), Common Law Unfair Competition (Fourth Cause of Action), and Intentional Interference with Contractual Relations and Business Expectancies (Fifth Cause of Action.)

The plaintiff, which operates throughout the United States, focuses on providing medications and software to pharmacies and clinics that allow them to dispense medications directly to patients. The plaintiff owns a United States Patent and Trademark Office Service Mark Registration for its "DocRx" mark (Reg. No. 4.504,977); the trademark was registered in April 2014 and the registration notes that the trademark was first used in commerce in March 2009. The plaintiff registered its Internet domain name of "docrxdispensing.com" in January 2009.

The defendants, DocRx Dispense, Inc. and its president/principal Martin V. Olson, also provide similar pharmaceutical and medical supply-related services. DocRx Dispense, Inc. was incorporated in Arizona in September 2012; the FAC alleges that DocRx Dispense Inc. is the alter ego of Martin V. Olson. Olson registered the Internet domain name "doxrxdispense.com" in October 2011, and the defendants also do business using the domain names "docrxdispense.net," "docrxdispensevideo.com," and "docrxdispensewebinar.com." The gist of the plaintiff's FAC is that the defendants' subsequent use of confusingly similar corporate name and domain names to compete with the plaintiff amounts to an unauthorized use of the plaintiff's DocRx mark and constitutes trademark infringement and unfair competition.

DocRx Dispense, Inc. was served with process through the Arizona Corporation Commission on April 28, 2014 (Doc. 13), and Martin V. Olson was personally served with process on May 17, 2014 (Doc. 15). The plaintiff filed its Application for Entry of Default and served it on the defendants on July 8, 2014

(Doc. 17), and the Clerk of the Court entered default against the defendants on July 9, 2014 (Doc. 18). In its pending default judgment application, the plaintiff seeks damages and injunctive relief against the defendants, as well as an award of its attorneys' fees and costs.

Discussion

   A. Whether Default Judgment Should be Entered

The Court must consider seven factors in determining whether to exercise its discretion to enter default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir.1986). In considering the Eitel factors, the Court takes all factual allegations in the complaint as true, except for those relating to damages. *See* TeleVideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir.1987).

The first factor weighs in favor of granting the plaintiff's motion because the failure to enter default judgment will cause the plaintiff to continue to suffer damage to its goodwill and business reputation due to the defendants' infringement of its trademark and may leave it without any other recourse for recovery.

The second and third factors favor a default judgment because the FAC is both factually and legally sufficient at least as to the federal claims alleged in it, and because the defendants, by defaulting, have admitted the factual allegations in the FAC not related to damages.

The fourth factor also favors a default judgment because the plaintiff is seeking significant damages and injunctive relief, as well as its fees and costs, and

the requested relief is balanced in relation to the seriousness of the defendants' infringing conduct.

The fifth factor also favors a default judgment because the sufficiency of the FAC and the defendants' default, along with the plaintiff's submission of evidence supporting its allegations regarding the defendants' infringing conduct, establish that a dispute regarding material facts is not a genuine possibility.

The sixth factor further favors a default judgment because the likelihood of the defendants' default being the result of excusable neglect is not a non-frivolous possibility since the record clearly establishes that the defendants have been aware of this action: the defendants were properly served with the FAC and the default application, and the plaintiff's evidence shows that defendant Olson personally communicated with the plaintiff's counsel on May 15, 2014, May 19, 2014, May 22, 2014, and June 9, 2014 regarding the possibility of resolving this action.

The seventh factor favors default judgment notwithstanding the strong public policy favoring decisions on the merits because the defendants' failure to defend this action renders an adjudication on the merits impractical, if not impossible.

Having reviewed all of the Eitel factors, the Court concludes that the entry of default judgment against the defendants is appropriate.

B.  Monetary Recovery

Based on the arguments presented and supported in its memorandum, the Court concludes that the plaintiff is seeking damages only pursuant to § 35 of the Lanham Act, 15 U.S.C. § 1117, for the profits it allegedly lost due to the defendants' infringement of its trademark.  Section 1117(a) governs the award of monetary remedies in trademark infringement actions and provides for an award of the defendants' profits, any damages sustained by the plaintiff, and the costs of the action. Lindy Pen Co., Inc. v. Bic Pen Corp., 982 F.2d 1400, 1405 (9th Cir.1993).

The plaintiff seeks an award of $945,000 in damages resulting from the defendants' infringement. The amount sought consists of an award pursuant to § 1117(a) of $315,000 in actual damages sustained by the plaintiff in the form of its lost profits, trebled pursuant to 15 U.S.C. § 1117(a) or §1117(b)[1]. More specifically, the actual damages claimed by the plaintiff are in two parts. First, the plaintiff states that its discovery has disclosed five accounts the defendants have with clinical doctors' offices which the plaintiff asserts have conservatively cost it $240,000 in lost profits. The plaintiff's computational reasoning is that transactions of this nature with clinical doctors' offices average profits of $2,000 to $2,500 each month, that if the defendants began infringing the plaintiff's mark in July 2012, they would have done so for over two years before default was entered, so the plaintiff's lost profits equal $2,000/month x 24 months x 5 accounts, which is $240,000 (before trebling.)  The evidence supplied by the plaintiff supporting its $240,000 lost profit figure consists (1) of three  unauthenticated pages obtained from a company named Bryant Ranch Prepack (Ex. F to Doc. 27-1) that apparently purport to show that the defendants had a business arrangement with Bryant Ranch Prepack of some unspecified nature that involved five other listed businesses, although there is no explanation in those documents as to what the defendants' connection is with those other five businesses, and (2) the declaration of Brian Ward (Ex. E to Doc. 27-1), who has been the plaintiff's CEO for over 10 years and has been in the pharmaceutical industry for over 18 years, who merely states in relevant part regarding these purported five accounts of the defendants: "Based upon my experience in the

---

[1] The plaintiff's memorandum cites in different places to both § 1117(a) and § 1117(b) as the statutory authority for trebling damages so the Court is not clear as to which section the plaintiff is actually relying on.

industry, on average, a clinic that is set up to dispense medication directly to patients will net profits between $2000 and $2500 monthly."

Second, the plaintiff also contends that it lost the opportunity to obtain the business of Mackenzie HealthCare for drug testing services because that company decided not to do business with either the plaintiff or the defendants, which also sought Mackenzie Healthcare's business, due to the confusion caused by the similarity of their company names. The plaintiff's computation reasoning as to its lost profits from not obtaining the Mackenzie HeathCare account is that the contract would have netted the plaintiff, on average, $150,000 to $200,000 in profit every six months, and if Mackenzie HealthCare had entered into a deal with the plaintiff for the three months before default was entered against the defendants the plaintiff would have conservatively netted $75,000 in profits since $150,000/every six months equates to $25,000/month. The evidence supplied by the plaintiff supporting this lost profit figure consists (1) of a declaration from Keith Barkley (Ex. C to Doc. 27-1), the founder and managing director of Mackenzie HealthCare, who states in relevant part: "I was approached by both companies to establish a business relationship. Due to the trouble I had distinguishing between DocRx, Inc. and DocRx Dispense, Inc. and the potential for confusion in the marketplace, I decided not to authorize any business transactions between Mackenzie HealthCare and either company[,]" and (2) the declaration of Brian Ward (Ex. E to Doc. 27-1), the plaintiff's CEO, who merely states in relevant part: "Based upon my experience in the industry, the business deal contemplated with Mackenzie Healthcare for drug testing and compounding services would have net profits, on average, $150,00 to $200,000 every six months."

In order to be awarded § 1117 damages, the plaintiff "must prove both the fact and amount of damages." Lindy Pen Co. v. Bic Pen Corp., 892 F.2d at 1407.  Since

trademark remedies are guided by tort law principles, the plaintiff must establish its damages "with reasonable certainty," which means that while requested damages need not be calculated with absoluteness exactness, the evidence submitted by the plaintiff must provide a reasonable basis for their computation. *Id.* The Court concludes that it cannot award any lost profit damages to the plaintiff because the evidence submitted by the plaintiff is simply too conclusory and/or speculative to provide a sufficient basis for a damages determination in any amount. *See id.*, at 1408 ("Many courts have denied a monetary award in infringement cases when damages are remote and speculative.")

Even if the Court were to accept the Bryant Ranch Prepack documents as sufficiently establishing that the defendants had five competing accounts, which they do not, no sufficient evidence has been presented that the plaintiff would have obtained those accounts but for the defendants' infringement. The plaintiff has not established that the defendants are its sole competitor or that it ever attempted to obtain those five accounts, nor has it sufficiently established that its profits from those accounts, had it obtained them, would have been in the range conclusorily stated by Mr. Ward. The Court has the same problems with the Mackenzie Healthcare-related evidence, *i.e.*, there is no sufficient evidence that Mackenzie HealthCare would in fact have awarded its contract to the plaintiff but for the defendants' infringement or that the plaintiff would have profited from that contract in the range conclusorily noted by Mr. Ward. As the Ninth Circuit has stated, "[t]o establish damages under the lost profits method, a plaintiff must make a prima facie showing of reasonably forecast profits[,]" *id.*, at 1407, and the plaintiff has not shown that its suffered any lost profits with the required reasonable certainty. Since the plaintiff has not provided a reasonable basis for computing damages, any determination of actual damages would be improperly based on speculation and

would amount to an improper windfall to the plaintiff.

C.  Injunctive Relief

In its motion, the plaintiff seeks the entry of both prohibitory and mandatory injunctive relief.  This requested relief consists of a permanent injunction prohibiting the defendants from using any variant of the plaintiff's DocRx service mark and from registering or using a domain name containing, confusingly similar to, or identical to the DocRx service mark, as well as requiring the defendants to transfer the registration and ownership rights of their "docrxdispense.com" domain name to the plaintiff.

Injunctive relief is the preferred remedy in trademark infringement and unfair competition cases because "there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1180 (9th Cir.1988); 15 U.S.C. § 1116(a).  The Court has the authority under the Lanham Act to "grant injunctions according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the trademark owner." Reno Air Racing Ass'n, Inc. v. McCord, 452 F.3d 1126, 1137 (9th Cir.2006) (Internal quotation marks omitted); § 1116(a).  As part of its authority under the Anticybersquatting Consumer Protection Act, the Court has the power to order the transfer of an infringing domain name to the owner of the mark. 15 U.S.C. § 1125(d)(1)(C).

Notwithstanding the plaintiff's failure in its memorandum to set forth any argument specifically directed at its request for injunctive relief, the Court concludes that broad injunctive relief is appropriate here in light of the likelihood of confusion arising from the defendants' use of the DocRx mark in offering services very similar to those offered by the plaintiff. *See* GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1211 (9th Cir.2000) ("When the infringing use is for a similar service, a broad

injunction is especially appropriate.") (Internal quotation marks omitted). More specifically, the Court concludes that a permanent injunction is appropriate because the record, viewed in light of the totality of the circumstances, sufficiently establishes that the plaintiff has suffered an irreparable injury, that the remedies available at law, such as monetary damages, are inadequate in this case to compensate the plaintiff for its injury, that a remedy in equity is warranted upon consideration of the balance of hardships between the plaintiff and the defendants, and that the public interest would be served by a permanent injunction. La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V., 762 F.3d 867, 879 (9th Cir.2014).

    D. Attorneys' Fees

The plaintiff seeks an award of its attorneys' fees in its motion solely pursuant to the Lanham Act, which provides that "[t]he Court in exceptional cases may award reasonable attorneys fees to the prevailing party." 15 U.S.C. § 1117(a). The Ninth Circuit reasons that "generally a trademark case is exceptional for purposes of an award of attorneys' fees when the infringement is malicious, fraudulent, deliberate or willful." Gracie v. Gracie, 217 F.3d 1060, 1068 (9th Cir.2000). The Court concludes that an award of reasonable attorneys' fees pursuant to § 1117(a) is appropriate here due to the defendants' refusal to defend this action, and because the factual allegations in the FAC, which the defendants have admitted by their default, together with the evidence submitted by the plaintiff reflecting the defendants' knowledge that they were infringing on the plaintiff's DocRx mark, *see e.g.*, Keith Barkley's declaration (Ex. C to Doc. 27-1) and the plaintiff's counsel's correspondence with defendant Olson (Ex. I to Doc. 27-1), sufficiently indicate that the defendants engaged in willful, deliberate infringement.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Entry of Default Judgment (Doc. 27) is granted in part to the extent that plaintiff DocRX, Inc. seeks

the entry of a permanent injunction and an award of its reasonable attorneys' fees and costs, and is denied to the extent that the plaintiff seeks an award of damages.

IT IS FURTHER ORDERED that the following permanent injunctive relief is entered against defendants Martin V. Olson and DocRx Dispense, Inc.:

1. Defendants Martin V. Olson and DocRx Dispense, Inc., their agents, representatives, employees, and assigns, and all persons in active concert and/or participation with Martin V. Olson or DocRx Dispense, Inc. who receive notice of this Order and/or the Court's Judgment in this action, are permanently enjoined from registering, trafficking, using, or maintaining the registration of any domain name that uses the term "DocRx."

2. Defendants Martin V. Olson and DocRx Dispense, Inc., their agents, representatives, employees, and assigns, and all persons in active concert and/or participation with Martin V. Olson or DocRx Dispense, Inc. who receive notice of this Order and/or the Court's Judgment in this action, are permanently enjoined from using any of plaintiff DocRx, Inc.'s trademarks, specifically its "DocRx" mark as shown in the exhibit to the First Amended Complaint (Ex. A to Doc. 9-1), including formatives thereof, any reproduction, counterfeit, copy or colorable imitation of the infringing mark, or any other name, mark, designation or depiction in connection with the defendants' activities or business in a manner that is likely to cause confusion regarding whether defendant DocRx Dispense, Inc. is affiliated or associated with, or sponsored by plaintiff DocRx, Inc., or that is likely to dilute the distinctiveness of plaintiff DocRx, Inc.'s trademark or any other marks owned by plaintiff DocRx, Inc.

3. Defendants Martin V. Olson and DocRx Dispense, Inc., their agents, representatives, employees, and assigns, and all persons in active concert and/or participation with Martin V. Olson or DocRx Dispense, Inc. who receive notice of this Order and/or the Court's Judgment in this action, are permanently enjoined from

assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in paragraphs 1 and 2.

4. Defendants Martin V. Olson and DocRx Dispense, Inc. are permanently enjoined from possessing all stationery, forms, printed matter, advertising, and paper goods containing the infringing mark and formatives thereof, and shall immediately destroy all such infringing materials in their possession.

IT IS FURTHER ORDERED that the registration and ownership rights to any infringing domain name that uses the term "DocRx," including, but not limited to, the domain name "docrxdispense.com" shall be transferred from defendant Martin V. Olson and transferred to plaintiff DocRx, Inc. Defendant Martin V. Olson is hereby ordered to take all actions necessary to transfer the infringing domain name(s) to plaintiff DocRx, Inc. Such transfer shall take place immediately, and no later than fourteen (14) calendar days from the date defendant Martin V. Olson is served with a copy of this Order and the Court's Judgment.

IT IS FURTHER ORDERED that defendant Martin V. Olson shall file with the Court and serve on plaintiff DocRx, Inc.'s counsel within thirty (30) days after being mailed a copy of this Order and the Court's Judgment, a report in writing, under oath, setting forth in detail the manner and form in which he has complied with the terms of the Court's injunction.

IT IS FURTHER ORDERED that plaintiff DocRx, Inc. shall file with the Court and serve a copy on defendants Martin V. Olson and DocRx Dispense, Inc., a motion for attorneys' fees and a bill of costs, pursuant to Fed.R.Civ.P. 54 and Local Rule 54.1 and 54.2 no later than fourteen (14) days after the entry of the Court's Judgment in this action.[2]

---

[2] The plaintiff is advised that any motion it files for attorneys' fees

IT IS FURTHER ORDERED that in the event that Defendants Martin V. Olson and DocRx Dispense, Inc. fail to comply with the material terms of this Order and the Court's Judgment, plaintiff DocRx, Inc. shall be entitled to recover any reasonable attorneys' fees and costs incurred in securing the defendants' compliance.

IT IS FURTHER ORDERED that plaintiff DocRx, Inc. shall use reasonable efforts to serve a copy of this Order and the Court's Judgment on defendants Martin V. Olson and DocRx Dispense, Inc. and shall file a notice of such service with the Court.

IT IS FURTHER ORDERED that the Clerk of the Court shall enter judgment in favor of plaintiff Doc.Rx, Inc. accordingly.

DATED this 20th day of April, 2015.

_____
Paul G. Rosenblatt
United States District Judge

---

pursuant to 15 U.S.C. § 1117(a) must include a good faith effort by it to apportion litigation-related time between the Lanham Act claims and the non-Lanham Act claims, as required by the Ninth Circuit. See Gracie v. Gracie, 217 F.3d at 1069-70 ("[W]e hold that as a general matter, a prevailing party in a case involving Lanham Act and non-Lanham Act claims can recover attorneys' fees only for work related to the Lanham Act claims.")